IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LETICIA TORRES-ROSARIO,

**Plaintiff**,

v.

MARIOTT INTERNATIONAL d/b/a
RITZ-CARLTON HOTEL, SPA &
CASINO,

**Defendant.**

CIVIL NO. 11-1875 (FAB)

**MEMORANDUM AND ORDER**[1]

BESOSA, District Judge.

Before the Court is defendant Ritz-Carlton Hotel, Spa & Casino's ("Ritz-Carlton") motion to dismiss all of plaintiff Leticia Torres-Rosario's ("Torres") claims and to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 (2012). After reviewing Torres' complaint and Ritz-Carlton's motion, the Court **GRANTS** Ritz-Carlton's motion and **DISMISSES** Torres' claims **WITHOUT PREJUDICE**.

I.   Procedural and Factual Background

Plaintiff Torres filed a complaint on September 5, 2011, against Ritz-Carlton alleging that its termination of her employment violated several federal and state anti-discrimination

---

[1] Justin Rowinsky, a second-year student at the Georgetown University Law Center, assisted in the preparation of this Memorandum and Order.

Civil No. 11-1875 (FAB)                                                    2

laws.  (Docket No. 1 at ¶ 1.)  Torres specifically avers that Ritz-Carlton violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); P.R. Laws Ann. tit. 29, § 146 ("Law 100," sex discrimination); P.R. Laws Ann. tit. 29, § 1321 ("Law 69," sex discrimination); P.R. Laws Ann. tit. 29, § 185a ("Law 80," unjustified discharge); and P.R. Laws Ann. tit. 31, §§ 5141-5142 ("Articles 1802 and 1803," respectively).  Id.

Torres was an employee of Ritz-Carlton from February 4, 2004, through June 12, 2010, when she was discharged.  Id. at ¶¶ 8, 17.  She was a waitress throughout her employment, and Ritz-Carlton promoted her to the title of "Head Waitress" and "Waiter/Waitress trainer," positions she still held at the time of her discharge.  Id. at ¶ 9.  All of Torres' performance evaluations allegedly noted that she "excelled" at her job.  Id.

On May 21, 2010, Torres was working together with a "Server Attendant,"[2] Juan Carlos Matos ("Matos").  Id. at ¶ 10.  During the "noon rush hour" Omar Vega ("Vega"), the Director of Food and Beverages, allegedly instructed Torres' manager, Berta Hernandez ("Hernandez"), to have the waiters and waitresses close all of their open accounts.  Id. at ¶ 11.  Closing an open account

---

[2] Torres refers to Matos as both a "Server Attendant" and an "assistant waiter."  Compare id. at ¶ 12, with id. at ¶ 13.  Therefore, the Court assumes that Matos was a subordinate of Torres because she had the title of "Head Waitress."

requires matching all of the restaurant's receipts with the clients' payments to ensure every receipt has been paid. See id. at ¶ 12. During that process Torres realized that one receipt had not been paid, and that the client had already left the restaurant. Id. After an unsuccessful attempt to locate the payment,[3] Torres asked Matos if the client had paid Matos or if Matos knew where the payment was. Id. at ¶ 13. Matos allegedly denied any knowledge of the client's payment. Id. Torres informed Hernandez that a client's payment was missing, and Hernandez allegedly told her to assign the receipt to a different table and look for the missing payment "after rush hour." Id. at ¶ 14. Torres contends that never found the missing payment, and filed her daily report, which was signed by Hernandez, at the end of her shift. Id.

On June 4, 2010, Hernandez allegedly instructed Torres to speak with Vega, who informed Torres that a "mystery shopper" had posed as a real client on May 21, 2010. Id. at ¶ 15. Vega, Torres argues, told Torres that the mystery shopper's receipt was the one that had lacked a payment, and that the mystery shopper had filed a report in which he stated that he had given $65.00 in cash to Matos as payment. Id. Torres contends that she then explained her

[3] Torres refers to the missing payment as a "check," even though the client had apparently paid in cash. Compare id. at ¶¶ 12-13, with id. at ¶ 15.

Civil No. 11-1875 (FAB)                                                                 4

side of the story, and told Vega that Hernandez had known and authorized Torres' response to the situation.  Id. at ¶ 16.  Torres was discharged on June 12, 2010, but Matos remained a "Server Attendant" employee of Ritz-Carlton.  Id. at ¶ 17.

Torres timely filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 30, 2010.  Id. at ¶ 18.  The EEOC found "reasonable cause to believe that violations of Title VII had occurred," and after failing to achieve a voluntary resolution through "conciliation," the EEOC sent a Notice of Right to Sue to Torres on June 6, 2011.  (Docket No. 1-2, and 1-6.)  Torres claims that she has suffered from depression, sleep deprivation, mental anguish, and marital difficulties in addition to financial distress as a result of Ritz-Carlton's termination of her employment.  Id. at ¶ 20.  She seeks $7,300,000 in damages.  Id. at p. 6.

On December 16, 2011, defendant Ritz-Carlton filed a motion to dismiss and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").  (Docket No. 7.)  Local Rule 7(b) requires a party opposing a motion to submit "a written objection to the motion, incorporating a memorandum of law" within fourteen days after service of the initial motion.  Loc. Rule 7(b).  Failure to do so is deemed a waiver of any objection, and "it is within the district court's discretion to dismiss an action based

on a party's unexcused failure to respond to a dispositive motion when such response is required by local rule." ITI Holdings, Inc. v. Odom, 468 F.3d 17, 19 (1st Cir. 2006) (finding that the failure to file a response within the time provided for by the District of Maine's Local Rule 7(b) constituted a waiver of any objections). Plaintiff Torres failed to timely file a motion in opposition.[4] Therefore, she has waived any objections to Ritz-Carlton's motion to dismiss and compel arbitration.

## II.  **Legal Standard for an Order Compelling Arbitration**

The FAA establishes the validity and enforceability of written arbitration agreements.  The FAA provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2012).  The FAA expresses a congressional policy in favor of arbitration, and places arbitration agreements on an equal footing with other contracts. 9 U.S.C. § 2; Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).  The FAA mandates district courts to compel arbitration when the parties have signed a valid arbitration

---

[4] Ritz-Carlton's motion to dismiss and compel arbitration was filed on December 16, 2011.  (Docket No. 7.)  Torres filed a motion to extend the time in which to submit an opposition on January 4, 2012.  (Docket No. 8.)  That motion was denied by the Court on January 9, 2012.  (Docket No. 9.)  Torres filed no further motions or requests.

Civil No. 11-1875 (FAB)                                                6
_____

agreement governing the issues in dispute, removing the district courts' discretion over whether to compel arbitration or provide a judicial remedy to the parties.  9 U.S.C. § 4; <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985).  The existence of a valid arbitration agreement is based on the consent of the parties to arbitrate at least some of their claims and to forgo a judicial remedy for those claims.  <u>McCarthy v. Azure</u>, 22 F.3d 351, 354-55 (1st Cir. 1994) (internal citations omitted). Therefore, a party cannot be required to submit to arbitration any dispute which he or she has not agreed to submit.  <u>AT&T Technologies, Inc. v. Comm'ns. Workers of Am.</u>, 475 U.S. 643, 648 (1986) (quoting <u>United Steelworkers v. Warrior & Gulf Navig. Co.</u>, 363 U.S. 574, 583 (1960)).

Based on the above principles, the United States Court of Appeals for the First Circuit has set forth four requirements that must be satisfied for a court to grant a motion to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the scope of the arbitration clause.  <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 142 (1st Cir. 2003).  The Court will briefly address each requirement.

Civil No. 11-1875 (FAB)                                                                   7

**III. Discussion**

      The Court notes at the outset that the First Circuit Court of Appeals has recently upheld a motion to compel arbitration from a case involving the same defendant, Ritz-Carlton, a discharged employee, and the same "Employee Agreement" as this case. See Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471 (1st Cir. 2011) (holding that the plaintiff was bound by the arbitration clause listed on page eleven of the "Ritz-Carlton Employee Agreement.").[5]

    **A.**    **Valid Arbitration Agreement**

      Ritz-Carlton has submitted a portion of the "Employee Agreement" ("agreement") that is given to all employees and which requires a signature acknowledging the employee's receipt of the information and acceptance of the incorporated terms and conditions. (Docket No. 7-1.) The document "outlines the rights and obligations of its employees," and includes a "three step alternative dispute resolution process that employees must follow to resolve workplace incidents before filing a lawsuit or administrative action." Soto-Fonalledas, 640 F.3d at 473

---

[5] Both this case and Soto-Fonalledas include the identical "Ritz-Carlton Employee Agreement" as evidence. Specifically, Docket No. 7-1 of this case contains the same page that enumerates the arbitration provision as the Soto-Fonalledas case. Soto-Fonalledas, Civil No. 09-2005, Docket No. 12-4 at p. 11 (D.P.R. Mar. 26, 2010).

Civil No. 11-1875 (FAB)                                                 8

(discussing the three step process that all Ritz-Carlton employees must follow that is identical to the agreement at issue in this case). The agreement refers to the three steps as "stages," and they are: (1) attempt to resolve workplace issues with the employee's supervisors; (2) seek further assistance through a "Peer Review Panel;" and finally (3) request arbitration if the employee wishes "to challenge [her] termination for any reason[s] . . . that [the employee] believes are discriminatory or retaliatory." (Docket No. 7-1 at pp. 7-12.) The third and final step (or "stage") is a valid arbitration clause that district courts are bound to enforce pursuant to the FAA. See Soto-Fonalledas, 640 F.3d at 476 (holding that the plaintiff "is bound" by precedent allowing Title VII claims to be submitted to arbitration without "violating congressional intent"); McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994) (holding that federal policy favors arbitration, and the party seeking to compel arbitration must show that both parties agreed to at least "arbitrate *some* claims.").

  **B. Moving Party Must be Entitled to Invoke Arbitration Clause**

  Even if the arbitration clause is valid, Ritz-Carlton must be entitled to invoke it. The second criterion "is satisfied if the party seeking to invoke the arbitration clause is a party to the agreement containing the arbitration provision." Caguas

Civil No. 11-1875 (FAB)                                                          9

Satellite Corp. v. Echostar Satellite LLC, 824 F.Supp.2d 309, 314 (D.P.R. 2011).  Torres' signature on a document that includes both her name and Ritz-Carlton's name is sufficient to allow Ritz-Carlton to invoke the arbitration clause because it is a party to that agreement.  See, e.g., id. (holding that the defendants could enforce the arbitration clause because they were parties to the agreement that the plaintiff electronically signed).

    **C.**    **Other Party Must be Bound by Clause**

    A party is bound by a contract that he or she signs.  See Caguas Satellite Corp., 824 F. Supp. 2d at 314 (holding that the plaintiff's electronic signature demonstrated that she "agreed to the arbitration provision and is therefore bound by its terms."). Because Torres signed the "Agreement of the Employees of the Ritz-Carlton" form, (Docket No. 7-2), she is bound by its terms pursuant to Puerto Rico contract law.  See Soto-Fonalledas, 640 F.3d at 475, 478 (holding that the exchange of promises contained in the Ritz-Carlton employee agreement is sufficient mutual consideration, and the plaintiff did not "deny that she received the agreement or that she signed for it.").

    **D.**    **Claims Must Fall Within the Scope of the Arbitration Clause**

    Finally, Torres's claims must be within the scope of the arbitration clause.  Courts are tasked with determining whether

"the arbitration clause is [] susceptible of an interpretation that covers the asserted dispute."  Caguas Satellite Corp., 824 F.Supp.2d at 314 (quoting AT&T Technologies, Inc. v. Comm'ns. Workers of Am., 475 U.S. 643, 650 (1986)).  First, Torres specifically avers that her discharge was "on the basis of her sex," and her claims all stem from Ritz-Carlton's alleged discrimination.  (Docket No. 1 at ¶ 1.)  In addition, the agreement expressly covers complaints about a termination of employment from alleged discrimination.  (Docket No. 7-1 at p. 12.)  Torres's acknowledgment and acceptance of the agreement renders her complaint about her discharge a claim that "comes within the [arbitration] clause's scope."  See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011).

District courts are "under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration" if the four criteria are met.  InterGen N.V., 344 F.3d at 142.  Torres has met all four criteria required for a court to compel arbitration pursuant to the FAA, and the Ritz-Carlton agreement's arbitration clause has previously been upheld as valid and enforceable.

**IV. Conclusion**

For the reasons discussed above, the Court **GRANTS** Ritz-Carlton's motion to dismiss and compel arbitration.  Torres's

Civil No. 11-1875 (FAB)                                                   11
_____

complaint is **DISMISSED WITHOUT PREJUDICE** and both parties are ordered to enter arbitration.  Judgment shall be entered accordingly.

    **IT IS SO ORDERED**.

    San Juan, Puerto Rico, July 5, 2012.

                                             <u>s/ Francisco A. Besosa</u>
                                             FRANCISCO A. BESOSA
                                             UNITED STATES DISTRICT JUDGE